## MEMO ENDORSED

| | | |
|---|---|---|
| United States | | Motion for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied. While Mr. Ahmed suffers from several medical conditions that increase his risks from COVID-19, Mr. Ahmed already has suffered from COVID-19 (from which he suffered mild symptoms) and thus has some immunity from further infection. But, even assuming his health challenges satisfiy his burden of establishing extraordinary and compelling reasons for early release, consideration of the Section 3553(a) factors strongly cuts against early release. Mr. Ahmed was convicted of importing substantial amounts of heroin in what was a sophisticated scheme. Furthermore, this was not Mr. Ahmed's first narcotics conviction, as he has others that qualify him as a career offender. As a result, Mr. Ahmed received a substantial sentence only a portion of which he has thus far served. Therefore, to grant this request would promote disrespect for the law and would undermine the deterrent effect of the sentence the Court imposed. |
| v. | 17-CR-00575 (KMK) | |
| Maroof Ahmed | | |

Motion For Compassionate Release

So Ordered.

*[signature]*

HONORABLE JUDGE KARAS            2/2/21

Defendant moves pursuant to 18 U.S.C.3582 (C)(1)(A) for compassionate release. Defendant is currently housed in FCI

Loreto which is at the heart of this Pandemic.

i) COVID-19 Pandemic and defendants Medical condition.

THIS COURT HAS THE AUTHORITY TO REDUCE DEFENDANT'S SENTENCE.

As amended by the FIRST STEP ACT, a court may modify a term of imprisonment on the motion of the petitioner after

considering the factors set forth in 18 U.S.C 3553(a) if "extraordinary and compelling reasons warrant such a reduction."

18 U.S.C. 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing

Commission ("Sentencing Commission") in U.S.S.G. 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act,

the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or

family circumstances and further defined the limits under which a sentence reduction may be given under those

justifications. U.S.S.G 1B1.13, n. 1(A)-(C). The Sentencing Commission also provided a "catch-all provision" that allowed for

a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the

reasons described in subdivisions (A) through (C)." Id at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act

was{2020 U.S. Dist.LEXIS 5} severely restricted because it required approval from the BOP before an individual could petition

the district court.

However, U.S.S.G. 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition

the district court directly without clearance from the BOP. And rightly so, because according to the Inspector General of the

Department of Justice (the "OIG") issued a report in 2013 that the Director of the BOP rarely filed 18 U.S.C. 3582(c)(1)(A)

sentence reduction motions (even for the defendants who clearly met the Sentencing Commission's objective criteria for a

sentence reduction). See U.S Dept's of Justice Office of the Inspector General. The Federal Bureau of Prisons' Compassionate

Release Program (Apr.2013) (Exhibit20).

Therefore, U.S.S.G.1b1.13 is merely advisory and does not bind the Court's application of 3582(c)(1)(A). McCoy v. United

States,2020. App.LEXIS 16636,2020 WL 2738225, at *4 (E.D. Va. May 26,2020) see also United States v. Lisi, 2020 U.S. Dist.

LEXIS 31127, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner]

has raised an extraordinary and compelling reason for compassionate release...[but 1b1.13's policy statement provides

helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive).And courts have

utilized that power.

United States v. Cantu-Rivera, Case No. 89-CR-204, 2019 U.S. Dist. LEXIS 105271, 2019 WL 2578272 (S.D. Tex. June 24,

2019), is instructive with regard to court's newfound authority to reduce sentences based on "extraordinary and compelling

{2020 U.S. Dist. LEXIS 23} reasons" (even if those reasons do not relate to medical condition, age or family circumstances).

Initially, the court in Cantu-Rivera explained that "[t]he First Step Act of 2018 amended 18 U.S.C. 3582(c)1)(A) to allow

district courts to modify sentences of imprisonment upon motion by the defendant if the defendant has fully exhausted all

[BOP] administrative rights.... or 30 days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." 2019 U.S.Dist. LEXIS 105271.[WL] at *1 (internal quotation marks omitted). It then reduced that

defendant's life sentence (for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine) to time

served.

Similarly, in United States v. Cantu, Case No.05-CR-458, 2019 U.S. Dist. LEXIS 100923, 2019 WL 2498923 (S.D. Tex. June

17,2019), the court noted that "[a] court may now," pursuant to 18 U.S.C. 3582(c)(1)(A), " modify a defendant's sentence if

it finds on either the BOP's or the defendant's motion that 'extraordinary and compelling reasons warrant such a reduction'

and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. ""2019 U.S. Dist.

LEXIS 100923 [WL] at *1. It then reduced that defendant's 290-month sentence (which had previously been reduced to 210

months based on Amendments 782 and 788 to the Guidelines) to time served (after service of more than 14 years of

imprisonment) based principally on his medical condition, even though he "ha[d] not presented evidence that his reasons are

extraordinary and compelling under the three explicitly defined reasons" set forth in Application Note 1 to Section 1B1.13 of

the Guidelines. 2019 U.S. Dist. LEXIS 100923, [WL] at *3.

And in United States v. McGraw, Case No. 02-CR-00018,2019 U.S.Dist. LEXIS 78370,2019 WL 2059488 (S.D. Ind.May,2019),

the Court stated that the First Step Act's modification of 18 U.S.C. 2582(c)(1)(A) "now provides an avenue for a defendant to

seek a [sentence reduction directly] from the Court" and that "courts have universally turned to U.S.S.G. 1B1.13 to provide

guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction."{2020 U.S. Dist. LEXIS 25}

2019 U.S.Dist. LEXIS 78370 at *6 [WL] at *1. It then reduced that defendant's life sentence (for possession with intent to

distribute methamphetamine) to time served (after service of more than 17 years imprisonment) based principally on "his

serious medical conditions, "even though he had a long criminal history and had occupies a "leadership" position in the

Diablos motorcycle gang. 2019 U.S.Dist. LEXIS 78370 at *11, [WL] at 2-6.

Here, defendant has served more 40% of his sentence, given the halfway house and programs under the First Step Act

defendant would be eligible for release before 2029.

i) COVID-19 PANDEMIC:

Defendant suffers from Type 1 diabetes and is Insulin dependant for the last 30 years. Defendant had a quadruple

bypass recently, has multiple stints in his arteries, has high blood pressure, high cholesterol, sleep Apnea, arthritis and acid

reflux. Defendant faces a heightened risk of developing severe symptoms once infected due to pre-existing conditions, and

may even face a heightened risk of contracting COVID-19 in the first place, due to his medical conditions and weak immune

system. Sadly, enough defendant just contracted the CORONA Virus.

As one court recently stated that prisons are "powder kegs for infection" and have allowed "the COVID-19 virus

[to] spread[] with uncommon and frightening speed, "United States v. Skelos, No. 15-CR-317, 2020 U.S. Dist. LEXIS 64639,

2020 WL 1847558, at *1 (S.D.N.Y.Apr.12,2020); see also An Ohio prison is now the largest source of virus infections in the

country, THE N.Y.TIMES (Apr.20,2020), https://www.nytimes.com/2020/04/20/us/coronavirus-live-news.html#link-

52cdb996 (noting that "four of 10 largest-known sources of infection in the United States were correctional facilities").

Given this reality, the need to expedite consideration of requests for compassionate release premised on potential

Case 7:17-cr-00575-KMK   Document 100   Filed 12/18/20   Page 8 of 15

exposure to COVID-19 takes on even new urgency. Several courts have have found that the combination of a

personal COVID-19 risk factor and especially high-risk prison atmosphere can support a finding that there is an

"extraordinary and compelling reason".

The significant outbreak at Loreto which houses 750 Inmates, 400 Inmates and 50 staff members have tested positive for

Corona Virus, defendant is one of them. But the officials at Loretto continue to insist that there are 130 Inmates. This is

a common practice by the BOP throughout their Institutions. The out break created a high likelihood that defendant will be

exposed to COVID-19,and he certainly did. BOP had already designated the defendant as "high risk" of contracting the virus.

Further, it must be noted that defendant tried to change his designation from Loreto to another BOP facility, either Medical

or with Cells instead of dorms. But the Government opposed it and this court sided with the Government and denied

defendant's request.

It must be noted that some Courts have even granted Compassionate release to defendants who were on "Lisinopril" Blood

pressure medication. It is an ACE inhibitor. See Interim Clinical Guidance for Management of Patients with Coronavirus

Disease (COVID-19), Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-

ncov/hcp/clinical-guidance-management-patients.html (It has been hypothesized that angiotension-converting enzyme (ACE)

inhibitors... may increase the risk of SARS-CoV-2 infection and COVID-19{2020 U.S.Dist.Lexis 14} severity; see also United

States v. Roman,2020 U.S.DistLEXIS53956,020 WL 1908665, at *2 (S.D.N.Y.Mar.7,2020).

The defendant on the other hand suffers from serious ailments and is on medication which is far worse than ACE Inhibitors.

Zuckerman, 2020 U.S. Dist. LEXIS 59588, 2020 WL 1659880, is especially persuasive. Like defendant, Zuckerman both had

underlying health conditions identified by the CDC as risk factors for serious illness and was incarcerated in a relatively

high-risk facility, FCI Otisville. 2020 U.S. Dist. LEXIS 59588,2020 WL 1659880, at *5. In its April 3 opinion, the court did not

note any reported cases of COVID-19 at Otisville . See BOP COVID-19 Database. But like FCI Danbury, FCI Loretto's internal

architecture inhibits social distancing. See Zukerman, 2020 U.S. Dist.Lexis 59588, 2020 WL *1,5; Brechlin and Keating. The

court in Zuckerman emphasized that an extraordinary risk of severe illness and death from COVID-19 can, under certain

circumstances, provide an "extraordinary and compelling reason" for release as defined in U.S.S.G 1B1.13 cmt.n.1(A)(ii)(I),

even when a significant {2020 U.S.Dist. LEXIS 59588,2020 WL 1659880, at *4,6. An emphasis on the latter facts, under

circumstances in which individual COVID-19 risk factors are compounded by an extraordinary hazardous prison environment,

"misses the point and understates the gravity of the COVID-19 pandemic."2020 U.S.Dist. LEXIS 59588, [WL] at *4. Given

It must be noted that Section 3553(a)(30, "[i]ncarceration ... is not the only kind of sentence available. "Brown,2020 U.S.

Dist.LEXIS 87133, 2020 WL 2091802, at *10 (internal citation omitted). To the contrary, "[n]oncustodial sentences also

curtail prized liberty interests and the defendant always faces the harsh consequences that wait if he violates the conditions

attached to such a sentence."(internal citation omitted).

35539(a)Factors

Admittedly, Defendant has a significant amount of time remaining on his sentence. But some courts in and outside this

Circuit have granted release to prisoners with significant remaining terms of imprisonment. Courts that have done so

generally have reasoned that personal health conditions recognized by the CDC as risk factors for severe illness, alone or in

combination with an especially hazardous prison atmosphere, amount to an "extraordinary and compelling reason" as defined

in U.S.S.G. 1B1.13 cmt.n.1(A)(ii)(I). See, e.g., United States v. Muniz, No 09-CR-199-1,2020 U.S. Dist. LEXIS 59255, 2020

WL 1540325, at *1-2 (S.D.Tex.Mar.30,2020)(granting compassionate release when the defendant had diabetes,

hypertension, {2020 U.S.Dist. LEXIS 17} and other conditions, and was housed in facility that had reported one staff and

one inmate case of COVID-19, with more than three years remaining on a 188-month sentence); United States v. Ben-Yhwh,

No. CR 15-830, 2020 U.S. Dist. LEXIS 65677, 2020 WL 1874125, at *2,4-7 (D.Haw.Apr. 13,2020) (granting compassionate

release due to old age and a variety of medical conditions, including asthma and diabetes, combined with the general threat

of COVID-19, with 52 months remaining on a 60 month sentence).

Several Federal courts around the country have found that compassionate release is justified under the circumstances.

Zuckerman, 2020 U.S. Dist. LEXIS 59588, 2020 WL 1659880, at *4 citing Perez, 2020 U.S. Dist. LEXIS 57265, 2020 WL

1546422, at *4; United States v. Colvin, 2020 U.S. Dist. LEXIS 54401, 2020 WL 1613943, *4 (D. conn. Apr.2, 2020);

United States v. Rodriguez, No. 2:03-CR-00271-AB-1,2020 U.S. Dist. LEXIS 58718, 2020 WL 1627331, at *7 (E.D.Pa.Apr.1,

2020); United States v. Jepen, No. 3:19-CV-00073 (VLB),2020 U.S.Dist. LEXIS 57007, 2020 WL 1640232, at *5 (D.Conn.Apr.

1,2020); Gonzalez, 2020 U.S. Dist. LEXIS 56422, 2020WL 1536155, at*3; Muniz, 2020 U.S.Dist. LEXIS 59255, 2020 WL

1540325, at *2; United Statesv. Campagna, No. 16 CR. 78-01 (LGS), 2020 U.S. Dist. LEXIS 54401, 2020 WL 1489829, at *3

(S.D.N.Y. Mar. 27, 2020).

The Court "must consider [] the [sentencing] factors set forth in [S]ection 3553(a) to the extent that they are

applicable.'"United States v. Rodriguez, No. 03-CR-271, 2020 U.S. Dist. LEXIS 58718, 2020 WL 1627331, at *11 (E.D.Pa.Apr.

1,2020) (citing 3582(c)(1)(A)). Under 3553(a), the Court must consider what is "sufficient, but not greater than necessary,

to comply with the purposes of [sentencing]." 3553(a). Potentially relevant factors include:

1. The nature and circumstances of the offense and the history and characteristics of the defendant, see 3553(a)(1);

2. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just

punishment for the defendant's crimes, see 3553(a)(2)(A);

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

__UNITED STATES__

(full name of the plaintiff or petitioner applying (each person must submit a separate application))

-against-

__MAROOF AHMED__

(full name(s) of the defendant(s)/respondent(s))

__17__ CV __00575__ (KMK) ( )

(Provide docket number, if available; if filing this with your complaint, you will not yet have a docket number.)

RECEIVED
DEC 15 2020

## APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS

I am a plaintiff/petitioner in this case and declare that I am unable to pay the costs of these proceedings and I believe that I am entitled to the relief requested in this action. In support of this application to proceed *in forma pauperis* (IFP) (without prepaying fees or costs), I declare that the responses below are true:

1. *Are you incarcerated?*   ☒ Yes   ☐ No   (If "No," go to Question 2.)
   I am being held at: __FCI LORETTO, PA 15940__

   Do you receive any payment from this institution?   ☐ Yes   ☒ No
   Monthly amount: _____

   If I am a prisoner, *see* 28 U.S.C. § 1915(h), I have attached to this document a "Prisoner Authorization" directing the facility where I am incarcerated to deduct the filing fee from my account in installments and to send to the Court certified copies of my account statements for the past six months. *See* 28 U.S.C. § 1915(a)(2), (b). I understand that this means that I will be required to pay the full filing fee.

2. *Are you presently employed?*   ☐ Yes   ☒ No
   If "yes," my employer's name and address are:

   Gross monthly pay or wages: _____

   If "no," what was your last date of employment? _____

   Gross monthly wages at the time: _____

3. In addition to your income stated above (which you should not repeat here), have you or anyone else living at the same residence as you received more than $200 in the past 12 months from any of the following sources? Check all that apply.

   (a) Business, profession, or other self-employment   ☒ Yes   ☐ No
   (b) Rent payments, interest, or dividends            ☒ Yes   ☐ No

SDNY Rev: 8/5/2015

(c) Pension, annuity, or life insurance payments     ☐ Yes     ☒ No
(d) Disability or worker's compensation payments    ☒ Yes     ☐ No
(e) Gifts or inheritances                           ☐ Yes     ☒ No
(f) Any other public benefits (unemployment, social security, food stamps, veteran's, etc.)    ☒ Yes     ☐ No
(g) Any other sources                               ☐ Yes     ☒ No

If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.

MY MOTHER GETS SOCIAL SECURITY BENEFITS, AND FOOD STAMPS, MY BROTHER WORKS AND SENDS ME MONEY.

If you answered "No" to all of the questions above, explain how you are paying your expenses:

4. How much money do you have in cash or in a checking, savings, or inmate account?  $20

5. Do you own any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value, including any item of value held in someone else's name? If so, describe the property and its approximate value:  NO

6. Do you have any housing, transportation, utilities, or loan payments, or other regular monthly expenses? If so, describe and provide the amount of the monthly expense:  NO

7. List all people who are dependent on you for support, your relationship with each person, and how much you contribute to their support (only provide initials for minors under 18):  NONE

8. Do you have any debts or financial obligations not described above? If so, describe the amounts owed and to whom they are payable:  NO

*Declaration:* I declare under penalty of perjury that the above information is true. I understand that a false statement may result in a dismissal of my claims.

12/12/2020
Dated

Signature

AHMED, FIAZ
Name (Last, First, MI)

48670-053
Prison Identification # (if incarcerated)

772 SAINT JOSEPH ST.   LORETTO   PA   15940
Address                City       State Zip Code

(814) 472-4140
Telephone Number

E-mail Address (if available)

IFP Application, page 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

__UNITED STATES__
(full name of the plaintiff/petitioner)

-against-

__MAKOOF AHMED__
(full name(s) of the defendant(s)/respondent(s))

__17__ CV __00575__ (KMK) ( )
(Provide docket number, if available; if filing this with your complaint, you will not yet have a docket number.)

RECEIVED DEC 15 2020 PRO SE OFFICE

## PRISONER AUTHORIZATION

By signing below, I acknowledge that:

(1) because I filed this action as a prisoner,[1] I am required by statute (28 U.S.C. § 1915) to pay the full filing fees for this case, even if I am granted the right to proceed *in forma pauperis* (IFP), that is, without prepayment of fees;

(2) the full $350 filing fee will be deducted in installments from my prison account, even if my case is dismissed or I voluntarily withdraw it.

I authorize the agency holding me in custody to:

(1) send a certified copy of my prison trust fund account statement for the past six months (from my current institution or any institution in which I was incarcerated during the past six months);

(2) calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from my prison trust fund, and disburse those amounts to the Court.

This authorization applies to any agency into whose custody I may be transferred and to any other district court to which my case may be transferred.

__12/12/2020__
Date

__[signature]__
Signature

__AHMED, MAKOOF__
Name (Last, First, MI)

__48670-053__
Prison Identification #

__772 SAINT JOSEPH ST.__   __LORETTO__   __PA__   __15940__
Address   City   State   Zip Code

---

[1] A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

SDNY Rev. 10/26/16