MEMO ENDORSED

---

## EMERGENCY MOTION-THREAT OF DEATH-COVID-19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------x

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    -against-                          **No. 17 Cr. 575 (KMK)**

**MAROOF AHMED,**

    **Defendant.**
---------------------------------------------------x

## DEFENDANT'S, PRO SE, RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE/RECONSIDERATION OF THE ORDER DATED FEBRUARY 2, 2021, DENYING HIS PRO SE MOTION FOR COMPASSIONATE RELEASE, PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3582(c)(1)(A)

**NOW COMES** Defendant, MAROOF AHMED, appearing *pro se*, and respectfully submits this Emergency Motion for an Order Modifying/Reducing his term of imprisonment, pursuant to 18 U.S.C. 3582(c)(1)(A), for an order reconsidering its February 2, 2021 Order denying compassionate release, and for an order appointing counsel, pursuant to 18 U.S.C. 3006A(a)(2)(B).

For the reasons set forth hereinafter, the Court should issue an order granting this motion in its entirety.

## I.    Legal Standard.

As a preliminary matter, this Court has the authority to modify this Defendant's sentence in accordance with the provisions of 18 U.S.C. 3582(c)(1)(A)(i). Further, the standard for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Tranps. Inc.*, *70 F.3d 255, 257 (2d Cir. 1995)*. Reconsideration is not an invitation "to treat the court's initial decision as the opening of dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *de los Santos v. Fingerson*, *No. 97 Civ. 3972, 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1990)*. The motion "cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been considered." *Koehler v. Bank of Bermuda Ltd.*, *No. M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005)*. Thus, reconsideration is available only so a court may correct for clear error, prevent manifest injustice, or review in light of newly available evidence. *Parrish v. Sollecito*, *253 F.Supp.2d 713, 715 (S.D.N.Y. 2003)*

-2-

## II.    **Statement of Relevant Facts.**

Defendant is presently serving a sentence imposed by this Court, and is tentatively scheduled to be released on December 23, 2029. The Defendant is 52 years of age and suffers from a number of underlying health issues that place him at an increased risk of death or serious bodily injury should he contract the novel and deadly coronavirus. His condition has progressively worsened, as demonstrated by the annexed medical records.

Defendant previously moved the Court for compassionate release. In the previous proceeding, the Court determined, *inter alia*, that Defendant had "exhausted his administrative remedies," and "that his health challenges place him at a high risk from the coronavirus." However, the Court denied relief citing the fact that Defendant has contracted and recovered from COVID-19, "and thus has some immunity from further infection," and that the Section 3553(a) factors "strongly cut against early release." The Court also noted that Defendant is a career offender. *Memo Endorsement/Order dated February 2, 2021.* No consideration was given to whether the sentence is now "greater than necessary," Defendant's "rehabilitation," or whether Defendant could be provided "medical care" "in the most effective manner."

### III. Arguments.

### THE ARE BOTH "EXTRAORDINARY AND COMPELLING REASONS" THAT WARRANT A SENTENCE REDUCTION, AND THE COURT SHOULD ENDEAVOR TO ORDER SUCH

Defendant is serving his sentence at a facility that has been ravaged by COVID-19. Other inmates have been granted compassionate release, who were suffering from considerably less COVID-19 risk factors that this Defendant. Those inmates include former President Trumps close friend Paul Manafort. Unfortunately, this Defendant is not so politically connected. That, however, does not prevent this Court from providing the same measure of protection afforded to the wealthy and politically connected.

Annexed hereto is a recent study report that conclusively establishes Defendant's deteriorating health. This study report was not available to the Court, or Defendant, prior to the previous order denying compassionate release. Although the Court previously cited to Defendant's recovery from a COVID-19 infection, the protection afforded by the antibodies is neither infinite nor measured, and there is a real risk of re-infection giving the current, and progressively worsening conditions of confinement. Both Defendant's health and the conditions of confinement, coupled present an immediate threat of death or serious bodily injury.

-4-

The Court should take immediate action (in a humanitarian effort) to ameliorate that threat.

It requires no citation of authority to say that this Court may grant this motion seeking a reduction in sentence based on the hazardous (and deadly) conditions of confinement compounded by the presence of COVID-19 and Defendant's underlying health issues. In deciding whether to grant a motion (after finding "extraordinary and compelling reasons") the Court consults Section 3553(a). "Application of the [section] 3553(a) factors requires an assessment of whether *the relevant* factors outweigh the extraordinary and compelling reasons and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas,* ___F.Supp.3d___, 2020 WL 2097653 (S.D.N.Y. May 1, 2020).

In the present case, the Court overlooked several Section 3553(a) factors that counseled in favor of release, affording attention to only two factors which arguably counseled against release. Specifically, Section 3553(a) directs a court to impose a sentence sufficient but "not greater than necessary." The Court imposed a definite term of imprisonment. However, that definite term might transform into a death sentence, should reinfection occur, making the current term "greater than necessary."

The Court, in its February 2, 2021 order, did not consider this fact. The Court may consider this fact at this time, in the context of Defendant's "renewed" motion for compassionate release, or may consider it as a basis for reconsideration of its prior order.

Further, Section 3553(a)(2)(D) directs a district court to "consider . . . the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner." As noted, Defendant suffers from a number of underlying health issues that place him at a greater risk of death or serious bodily injury from COVID-19. The conditions of confinement make it impossible for this Defendant to received adequate and appropriate medical care in the most effective manner, should he suffer reinfection with severe complications.

As the Court did not consider the need for the sentence imposed to provide essential medical care in the most effective manner, the Court may rely upon the inadvertent failure to consider this favorable Section 3553(a) factor as a basis for granting the "renewed" motion, or for granting reconsideration of its February 2, 2021 Order.

-6-

Finally, Section 3553(a)(2)(D) also compels a district court to consider a Defendant's rehabilitation. In *United States v. Maier, 975 F.2d 944 (2d Cir. 1992)*, the Second Circuit held that Congress did not abandon rehabilitation as a permissible goal of sentencing when it passed the Sentence Reform Act of 1987. Instead, the Court held that Congress continued to endorse rehabilitation as a goal of a sentence under Section 3553(a)(2)(D). However, in considering the previously filed motion, the Court gave no consideration to Defendant's exemplary efforts at rehabilitation, which undermine any need for continued incarceration.

Further, Defendant's deteriorating health also conclusively establishes that he poses no danger to the community, and would pose no danger to any other person if released. These facts counsel in favor of granting compassionate release, and the Court should endeavor to do so.

**IV. Conclusion.**

Based on the foregoing, it is abundantly clear that the Court overlooked factors that counseled in favor of granting the motion for compassionate release.

The motion for reconsideration of the Court's prior denial of the motion for compassionate release is denied. First, Defendant has identified no fact or law that the Court overlooked. Instead, he merely repeats arguments that were considered and rejected. Second, Defendant is now fully vaccinated, which thoroughly undercuts his claim that there are extraordinary and compelling medical reasons to justify early release. Third, the Section 3553(a) factors still weigh strongly against early release. Defendant was convicted of serious crimes and has served less than half his sentence. Early release would undermine both respect for the law and general deterrence.

So Ordered.     -7-

4/28/21

WHEREFORE, Defendant prays that this Court will grant this motion

in its entirety.

Dated: Brooklyn, New York
      April 23, 2021

                Respectfully submitted,

*Maroof Ahmed*

                **MAROOF AHMED**
                **REG. NO. 48670-053**
                **F.C.I. LORETTO**
                **P.O. BOX 1000**
                **CRESSON, PA 16630**

## V.    Certificate of Service.

This shall certify that a true and correct copy of this motion has

been furnished upon the U.S. Attorneys Office for the Southern District

of New York at One Saint Andrews' Plaza, New York, New York 10007,

by my having caused same to be placed in the United States Mail,

postage prepaid, on this 23rd day of April, 2021.

The Government is to respond to this
application by 4/30/21.

So Ordered.

*Maroof Ahmed*

**MAROOF AHMED**

4/23/21

-8-



**CDL**
NUCLEAR TECHNOLOGIES, INC.

**Transthoracic Echocardiogram**
**Study Report**

48670 -053
**MAROOF AHMED**
March 26, 2021

| | |
|---|---|
| **MRN:** 48670-053LOR | **Study Time:** 11:20 AM |
| **DOB:** 1969-04-16   **Age:** 51 | **Reading Group:** Thomas A Kavic, MD |
| **Gender:** M | **Referring Group:** Unassigned CDL |
| **HR:** 177 | **Sonographer:** ADM |
| **Height:** 70 in   **Weight:** 230 lbs | **Equipment:** Vivid i |
| **BP:** 130/80 mmHg   **BSA:** 2.31 m² | |
| **BMI:** 33 | |

**Study Quality:** Good

| Left Ventricle | | Normal | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LVEDV (A4C) | 226.9 ml | (62 - 150) | LVIDs | 4.3 cm | (2.3 - 4) | MV Decel Time | 229.8 ms | (143 - 219) |
| LVEDV (A4C) / BSA | 98.25 ml/m² | (34 - 74) | LVPWs | 1.9 cm | (0.9 - 1.5) | Septal s' | 7.08 cm/s | (7.8 - 18.5) |
| LVESV (A4C) | 114.9 ml | (21 - 61) | LVRWT | 0.40 | | Septal E/e' | 12.41 | (<8) |
| LVESV (A4C) / BSA | 49.75 ml/m² | (13 - 29) | LV Length D | 8.6 cm | | Aorta | | Normal |
| LVEDV (A2C) | 146.5 ml | (62 - 150) | LV length S | 7.1 cm | | AoD (Mm) | 3.2 cm | |
| LVEDV (A2C) / BSA | 63.00 ml/m² | (34 - 74) | Left Atrium | | Normal | AoD Ascending (Prox) | 2.8 cm | (2.6 - 3.4) |
| LVESV (A2C) | 116.2 ml | (21 - 61) | LA (Mm) | 4.8 cm | (2 - 4) | AoD Asc. (Prox) / BSA | 1.21 cm/m² | (1.3 - 1.7) |
| LVESV (A2C) / BSA | 50.31 ml/m² | (13 - 29) | LAs (A4C) | 8.0 cm | | AoD Arch | 2.4 cm | |
| LVEDV (BIPLANE) | 193.6 ml | | LAs (A2C) | 5.2 cm | | Aortic Valve | | Normal |
| LVESV (BIPLANE) | 118.5 ml | | LA Volume | 73.0 ml | (18 - 58) | LVOT Diam | 2.1 cm | (1.8 - 2.2) |
| LVEDV | 170.5 ml | | LA Volume / BSA | 31.61 ml/m² | (16 - 34) | LVOT Pk Vel | 0.59 m/s | |
| LVESV | 172.5 ml | | LA Area ES (A4C) | 24.9 cm² | | LVOT Pk Grad | 1.9 mmHg | |
| EF | 36.5 % | (52 - 72) | LA Area ES (A2C) | 18.0 cm² | | LVOT VTI | 16.5 cm | (18 - 22) |
| LVSV | 77.1 ml | (81 - 109) | Right Atrium | | Normal | LVOT SV | 57.5 ml | (60 - 100) |
| LVSV / BSA | 33.38 ml/m² | (18 - 46) | RA Area | 11.7 cm² | (<=18) | LVOT CO | 10.2 l/min | (4 - 8) |
| LVCO | 13.5 l/min | (4 - 8) | Mitral Valve | | Normal | AV Pk Vel | 1.22 m/s | |
| LVCI | 4.5 l/(min*m²) | (1.2 - 3.2) | MV EF Slope | 0.08 m/s | (7 - 15) | AV Pk Grad | 6.0 mmHg | (<10) |
| IVSd | 1.1 cm | (0.6 - 1) | MV Max Vel | 1.0 m/s | (0.9) | AV Mean Grad | 3.0 mmHg | (<=40) |
| LVIDd | 5.9 cm | (4.2 - 5.9) | MV Mean Grad | 1.4 mmHg | | AV VTI | 23.5 cm | (18 - 22) |
| LVIDd / BSA | 2.55 cm/m² | (2.2 - 3.1) | MV Pk Grad | 3.8 mmHg | (<2) | AVA (VTI) | 2.4 cm² | (>1) |
| LVPWd | 1.2 cm | (0.6 - 1) | MV VTI | 28.7 cm | (10 - 12) | AVA / BSA | 1.05 cm²/m² | (>0.6) |
| LV Mass | 285.1 g | (88 - 224) | MVA | 3.7 cm² | (4 - 5) | AV Index | 0.8 | |
| LV Mass / BSA | 123.46 g/m² | (49 - 115) | MV Pk E Vel | 0.9 m/s | (0.7 - 1.2) | Pulmonic Artery | | Normal |
| LV FS (midwall) | 16.9 % | (14 - 22) | MV Pk A Vel | 0.7 m/s | (0.4 - 0.7) | LA / Ao | 1.5 | |
| IVSs | 1.5 cm | (0.3 - 1) | MV E/A Ratio | 1.21 | (0.76 - 1.76) | | | |
| | | | MV PHT | 59.2 ms | (30 - 60) | | | |

After informed consent, a complete Transthoracic Echocardiogram was performed.

## Findings:

1. Moderately depressed LV systolic function with EF 34%.
Left ventricle cavity is mildly dilated in size.
Moderate decrease in global wall motion.
Left ventricle regional wall motion findings: Localized septal and inferior hypokenesia.
LV diastolic function is preserved.
2. Left atrial cavity is mildly_moderately dilated at 4.8 cm.
3. Right atrial cavity is normal in size.
4. Right ventricle cavity is normal in size.
Normal right ventricular function.
5. Structurally normal trileaflet aortic valve with no regurgitation.
AV Pk Grad of 6 mmHg, AV Mean Grad of 3 mmHg, AVA (VTI) calculated area of 2.4 cm^2.
6. Structurally normal mitral valve with trace regurgitation.
7. Structurally normal tricuspid valve with no regurgitation.
8. Structurally normal pulmonic valve with trace regurgitation.
9. No evidence of significant pericardial effusion.
10. The aortic root is normal.
11. Normal pulmonary artery.
12. IVC is normal with respiratory variation.



### Conclusions:
Moderately depressed LV systolic function with EF 34%.
Left ventricle cavity is mildly dilated.
Moderate decrease in global wall motion.
Left ventricle regional wall motion findings: Localized septal and inferior hypokenesia.
Left atrial cavity is mild-moderately dilated at 4.8 cm.
LV diastolic function is preserved.

*Thomas Kavic, MD*
Electronically Signed on Studycast
March 30, 2021 07:23 AM EDT